*E-filed:* 9/5/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUADALUPE NIETO,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C-05-00659 RMW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 11, 14, 15]** |

## I. INTRODUCTION

Plaintiff Guadalupe Nieto ("Nieto") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain review of the Commissioner's decision holding Nieto ineligible for Supplemental Security Income (SSI) because the value of her non-excludable resources exceeded $2,000. Nieto was initially found eligible for SSI benefits in the early or mid-1990s based on disability due to alcoholism. Administrative Transcript ("Tr.") 68. In 2001, Nieto was found to be disabled and eligible for SSI due to post-traumatic stress disorder and alcohol dependence, in remission. Tr. 235-240. However, in a Notice of Planned Action dated August 14, 2003, Nieto was informed that she was ineligible for SSI from August 1, 2002 onward due to excess resources. Tr. 363. On reconsideration, Nieto's ineligibility was upheld, but only for the period from June 1, 2003 and thereafter. Tr. 385-387. An Administrative

1  Law Judge ("ALJ") held a hearing on September 21, 2004. Tr. 455-464. On October 29, 2004, the ALJ
2  determined that Nieto was ineligible for SSI payments beginning June 1, 2003 through the date of the
3  decision. Tr. 223-228. The Appeals Council denied Nieto's request for review on December 17, 2004.
4  Tr. 214-216, 217-219.

5  Nieto filed a complaint in this court on February 11, 2005. The parties have filed cross-motions
6  for summary judgment. Because the ALJ's decision was not supported by substantial evidence, the court
7  grants Nieto's motion and denies the Commissioner's motion, and reverses and remands for a
8  determination of benefits consistent with this opinion.

## II. STATEMENT OF FACTS

10  For the purposes of this motion, the parties do not dispute that Nieto is disabled. In 1979,
11  Guadalupe Nieto and William R. Savage ("Savage") jointly took title to a 20 acre piece of property in
12  Santa Cruz County (the "Boulder Creek property"). *See* Tr. 224, 316-317, 318, 320, 362, 441, 458-9.
13  The Boulder Creek property's value is currently assessed at $52,123. Tr. 375, 389. Nieto represented
14  herself as Savage's wife on the Grant Deed for the Boulder Creek property. Tr. 316. Nieto has never
15  applied for a permit to build on the Boulder Creek property. Tr. 459. The government does not appear
16  to dispute that, between the purchase date and the early 1990s, both Nieto and Savage lived on the
17  property for most of the year. Nieto testified that around 1991, she was traumatized by a kidnapping
18  incident, which led to her becoming disabled. Tr. 46, 236. In 1992, Nieto left the Boulder Creek
19  property to live with her mother. Tr. 441. Nieto testified that she returned to live on the Boulder Creek
20  property at some point in 1998-1999. Tr. 441. However, other records indicate that she was living
21  either with Irma Sain or at a friend's studio apartment at 5757 Bonny Doon Road, Santa Cruz, California
22  (the "Bonny Doon apartment"), from August 1998 until July 2002. Tr. 39, 285, 326, 327, 330, 340, 342,
23  347-48. On October 10, 2001, in response to a question on her Statement for Determining Continuing
24  Eligibility for Supplemental Security Income Payments, Nieto listed the Boulder Creek property as real
25  estate she owned, despite being specifically instructed not to include her "home" in the list. Tr. 333.
26  Nieto generally used a P. O. Box rather than the Boulder Creek address to receive mail, claiming that
27  mail delivery was unreliable at the Boulder Creek address. Tr. 461. Beginning on August 13, 1998
28  through at least May 31, 2003, Nieto also received mail at the Bonny Doon Road address. Tr. 11, 389,

390-407, 411-421, 423, 425.  Nieto also used the Bonny Doon apartment as her address for her voter registration.  Tr. 461.

On July 27, 2002, Nieto moved into a trailer owned by a relative on the Boulder Creek property to live.  Tr. 362, 374.  She remained there until May 31, 2003, when the trailer was removed.  Tr. 226, 362, 374.  On June 1, 2003, Nieto moved back to the Bonny Doon apartment, where she did not have to pay rent or utility bills.  Tr. 359, 362, 368, 382.  Nieto indicated that she intended to have surgery and to stay temporarily at the Bonny Doon apartment until she recovered.  Tr. 362.  In November 2003, Nieto was still apparently living at 5757 Bonny Doon Road.  Tr. 368.  In a statement dated February 23, 2004, Nieto indicated that she had had foot surgery on January 15, 2004, was still living at 5757 Bonny Doon Road, but intended to return to the Boulder Creek property eventually.  Tr. 382.

### III.  LEGAL STANDARDS

The district court's review of the ALJ's decision is limited.  The Secretary's determination denying benefits will be upheld "if it is supported by substantial evidence and is based on the proper legal standards."  *See* 42 U.S.C. § 405(g); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  "The decision will be set aside, however, if the proper legal standards were not applied in weighing the evidence and making the decision even though the findings are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  The Ninth Circuit in *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997), defined "substantial evidence" and described the relevant standard of review:

> Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.  Where the evidence is susceptible to more than one rational interpretation, we must uphold the Commissioner's decision.

*Sandgathe*, 108 F.3d at 980 (internal citations and quotation marks omitted).

### IV. DISCUSSION

**A.    The ALJ's Findings**

The ALJ determined that Nieto had not lived on the Boulder Creek property at any time between 1992 and July 27, 2002.  Tr. 225.  The ALJ agreed that Nieto used the property as her principal place

1  of residence from July 27, 2002 until May 31, 2003 by living on a trailer on the property. Tr. 226, 227.
2  However, he also determined that Nieto left the property in May of 2003 without intending to return,
3  and that the property was unfit from that point to be Nieto's principal place of residence because the
4  trailer was about to be removed. Tr. 226-227. The ALJ discounted Nieto's statements that she did
5  intend to return to the land as lacking credibility based on inconsistencies in her hearing testimony and
6  in written materials Nieto submitted to support her claims for SSI. Tr. 226. In sum, the ALJ found that
7  the Boulder Creek property ceased to be Nieto's "home" as of June 1, 2003, that the property ceased to
8  be an excludable resource from that date onward for the purpose of determining eligibility for SSI, and
9  that Nieto was therefore ineligible to receive SSI benefits beginning June 1, 2003. Tr. 227.

**B.     Applicable Law**

Under the Social Security Act, in order to qualify for benefits, a single person must not have "resources" in excess of $2,000. 42 U.S.C. § 1382b(a)(1)(B). "Resources" are defined as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). However, an individual's "home" is not counted as a "resource" for purposes of the $2,000 limit. 42 U.S.C. § 1382b(a)(1); 20 C.F.R. § 416.1212(b). A "home" is defined as "any property in which an individual (and spouse, if any) has an ownership interest and which serves as the individual's principal place of residence." 20 C.F.R. § 416.1212(a). If a person moves out of his or her home *without the intent to return*, that home is no longer the principal place of residence and its value is counted against the $2,000 resource limit beginning on the first day of the first month after it ceases to be the principal place of residence. 20 C.F.R. § 416.1212(c) (emphasis added).

**C.     No Substantial Evidence Supports the ALJ's Determination that Nieto was Ineligible for Benefits because of Excess Resources**

The ALJ's decision appears to depart in several important respects from the procedure outlined in the agency's own guidelines for determining a claimant's "home" for purposes of SSI benefits. Because (1) the agency's guidelines suggest that Nieto should have been allowed to continue to exclude the Boulder Creek property from her resources, and (2) the inconsistent statements cited by the ALJ were not relevant to the credibility of Nieto's statements of intent to return after June 1, 2003, this court

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-05-00659 RMW
IAK                                         4

finds no substantial evidence in the record to support the ALJ's determination that Nieto was ineligible to receive SSI benefits on the basis of excess resources as of June 1, 2003.

### 1. The Agency's Interpretive Guidelines of the Governing Regulations

The Social Security Administration ("SSA") has issued interpretive guidelines on determining whether an individual's property constitutes her "home." Programs Operations Manual System (POMS) SI 01130.100.[1] Under the guidelines, an individual's alleged home is *assumed* to be her principal place of residence "[a]bsent ownership in more than one residence or evidence that raises a question about the matter." POMS SI 01130.100B.2. Where an individual receiving SSI is absent from the home, the administrator is instructed to obtain a signed statement from the individual indicating when and why she left the home, whether she intends to return home, and when any decision not to return was made. POMS SI 01130.100D.1. The administrator is instructed to rely on this statement to establish intent to return unless the statement is self-contradictory. *Id*. The administrator is further instructed not to consider an individual's physical condition or other circumstances when determining this intent. POMS SI 01130.100D.3.

As interpretations of the governing regulations, the POMS guidelines are "not accorded the force and effect of law" and thus are not strictly binding on the Commissioner. *Powderly v. Schweiker*, 704 F.2d 1092, 1096 (9th Cir. 1983). However, they do have persuasive value. *Id*. (*citing Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.")). The ALJ was not strictly bound to follow the procedures outlined in the POMS guidelines in dealing with Nieto's case. However, the guidelines are relevant with respect to establishing the existence or lack of substantial evidence to support the ALJ's determination. Here, application of the guidelines supports plaintiff.

### 2. The ALJ Departed from the POMS Guidelines in Determining that the Boulder Creek Property Was a Countable Resource

The ALJ first departed from the Commissioner's guidelines by questioning Nieto's credibility without making a specific finding that her signed statement of intent was self-contradictory, as

---

[1] Available at http://policy.ssa.gov/poms.nsf/lnx/0501130100!opendocument.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-05-00659 RMW
IAK                         5

1   ordinarily required by the POMS guidelines. *See* POMS SI 01130.100D.1.  The ALJ made no such
2   finding, nor does the evidence indicate that Nieto made any self-contradictory statements at all about
3   her intent to return after June 1, 2003.  In fact, on three separate occasions Nieto clearly indicated that
4   her absence was temporary, that she planned to have surgery done, and that she intended to return to the
5   property at some point after she recovered.  Tr. 362, 368, 382.  In Nieto's February 23, 2004 statement,
6   she specifically indicated that she had had foot surgery on January 15, 2004 and that she planned to
7   return at some point.  Tr. 382.  The ALJ did not challenge the fact that Nieto had the claimed foot
8   surgery, and none of the above statements of intent otherwise contains "conflicting or unclear
9   expressions of intent" to return.  POMS SI 01130.100D.2.  There is no evidence in the record that Nieto
10  made any other statements expressing an intent not to return.

11        The ALJ's finding that Nieto could not have intended to return to the Boulder Creek property
12  because it was "unfit" to be her principal place of residence due to the removal of the trailer in which
13  she had been living is not necessarily correct.  The POMS guidelines do not require there to be a
14  permanent or particular structure in order for property to be considered a principal place of residence.
15  Here, the record indicates (and it is not disputed) that Nieto lived on the Boulder Creek property after
16  the purchase of the property in 1979 through the early 1990s variously in a trailer, a teepee, or tents.
17  Moreover, even if the Boulder Creek property could have been considered "unfit" on June 1, 2003 to
18  be Nieto's principal place of residence, the POMS guidelines give the following examples of intent to
19  return determinations that clearly indicate that an individual's intent to return does not depend on the
20  "fitness" of the residence, or any external factors at all:

21  > Do not consider other factors, such as the individual's age, physical condition, *or other*
22  > *circumstances* when determining intent to return home.  Assuming the individual is mentally competent, age, mental capacity, and physical condition are not factors in evaluating the individual's statement of intent.
23
24  > Example:  The recipient is 93 years old and in the intensive care unit of a hospital.  She tells the field representative that her doctor believes she may not be able to leave the hospital and return home.  However, she states that she intends to return to her former
25  > residence as soon as she is well enough to leave the hospital.  Based on her statement, "intent to return home" is established.
26
27  > Example:  The recipient's home was partially destroyed by fire.  He does not know when the necessary repairs will be completed. In the meantime, he is living with his sister. He states he intends to return to the former residence as soon as possible.  Based on his
28  > statement, "intent to return home" is established.

1  POMS SI 01130.100D.3 (emphasis added).  The removal of the trailer in May 2003 is minimally
2  probative at best as to Nieto's subjective intent to return; there is nothing in the record to suggest the
3  trailer was removed at Nieto's behest, she clearly expressed her intent to return several times, and the
4  ALJ made no finding that her statements were self-contradictory.  Furthermore, to *require* that a
5  permanent dwelling structure exist in order to find that a property is a principal place of residence would
6  appear to be at odds with the broad wording of the guidelines.  *See* POMS SI 01130.100A.3 ("[An
7  individual's principal place of residence] can be real or personal property, fixed or mobile, and located
8  on land or water.").  Lastly, Nieto appears to have no other place she can call home except possibly her
9  mother's or a friend's apartment where she has been allowed to stay without paying for rent or the
10 utilities.

11       The ALJ supported his finding that Nieto did not have intent to return with evidence that she
12 registered to vote and received mail at the Bonny Doon address.  Tr. 227.  The Commissioner
13 mistakenly argues that under the POMS guidelines, "when a claimant has multiple residences, the
14 Agency fact-finder should determine the claimant's principal place of residence" based on the above
15 factors.  Defendant's Motion for Summary Judgment, p. 4*; see* POMS SI 01130.100B.2.  Yet the
16 guidelines clearly indicate that such evidence is used to determine a principal place of residence where
17 a claimant *owns* more than one residence.  POMS SI 01130.100B.2.  It is not disputed that Nieto owns
18 only one residence (the Boulder Creek property).  Nieto also used the Bonny Doon Road address to
19 receive mail between July 2002 and May 2003, during which period the ALJ and Commissioner
20 concede that she was using the Boulder Creek property as her principal place of residence.  Given the
21 circumstances, this court cannot agree that Nieto's use of other addresses for receiving mail and voter
22 registration constitutes substantial evidence of her intent not to return to the Boulder Creek property.

23       **3.**    **No Substantial Evidence Supports the ALJ's Finding that Nieto's**
24               **Statements of Intent to Return Lacked Credibility**

25      Rather than making a specific finding that Nieto's statements of intent to return were self-
26 contradictory, the ALJ apparently chose to disregard Nieto's statements of intent to return on the basis
27 that she was "generally not credible."  Tr. 227.  Yet the inconsistencies cited by the ALJ are largely
28 irrelevant or have their force undermined because the ALJ and the Commissioner concede that Nieto

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT—C-05-00659 RMW
IAK                                        7

was living on the Boulder Creek property as her principal place of residence from July 2002 until May 2003. For instance, the ALJ cites the failure to apply for a permit to build on the land as being inconsistent with her purported intent to live on the land. Yet her failure to apply for a permit did not prevent a determination that she was using the land as her principal place of residence from July 2002 until May 2003. In addition, Nieto does not appear to have the funds to build on the property and her life style seem to be consistent with living in a trailer, tent or car on the property as she testifies she has done in the past. Similarly, the fact that Nieto listed the Boulder Creek property as non-home property on her Statement for Determining Continuing Eligibility for SSI Benefits in 2001 is irrelevant because in 2002 she *was* using the property as her home. With respect to the ALJ's finding that Nieto's claim that she returned to live on the Boulder Creek property in 1998 or 1999 was inconsistent with other documents indicating she lived elsewhere during that time, this is not probative of Nieto's intent to return because she did return to the property to live in 2002. While the above inconsistencies may support the ALJ's finding that Nieto was "adjusting her testimony according to the needs of the moment" (Tr. 226), they do not constitute substantial evidence that Nieto lacked credibility about her intent to return to the Boulder Creek property after June 1, 2003.

The ALJ also found that Nieto's claimed disabilities were "fundamentally inconsistent" with her "assertion that she maintains a completely undeveloped, remote, thickly forested, mountainside property as her principal place of residence." Tr. 226. However, this misstates Nieto's responsibilities under the law. Again, the regulations appear to allow Nieto to continue to exclude the Boulder Creek property as her principal place of residence even when absent, as long as she intends to return there. 20 C.F.R. § 416.1212(a), (c). The POMS guidelines clarify that "[a]n individual's principal place of residence is the dwelling the individual *considers* his or her established or principal home and to which, if absent, he or she intends to return." POMS SI 01130.100A.3 (emphasis added). As Nieto points out, the fact that she considers the Boulder Creek property to be her principal home (despite its undeveloped character) is not inconsistent with the fact that her disability occasionally requires her to be absent from it. The court also notes that the undeveloped character of the property did not prevent the ALJ from determining that Nieto did use the property as her principal place of residence from July 2002 until May 2003.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-05-00659 RMW
IAK                                                                 8

"In applying the substantial evidence test we are obligated to look at the record as a whole and not merely at the evidence tending to support a finding." *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir. 1978). The POMS guidelines strongly suggest that Nieto's non-self-contradictory statements of intent to return should have been accepted as true, and the evidence cited by the ALJ to find Nieto lacked such intent is largely irrelevant in light of the ALJ's acknowledgment that Nieto lived on the Boulder Creek property as her principal place of residence in 2002 and 2003. In view of the whole record, this court cannot agree that there was substantial evidence to support the ALJ's departure from established SSA guidelines to find that Nieto's statements of intent to return lacked credibility, and therefore there was no substantial evidence to support the determination that the Boulder Creek property was a countable resource beginning June 1, 2003.

## V.  ORDER

For the foregoing reasons, the court grants plaintiff's motion for summary judgment and reverses the ALJ's decision, and denies defendant's motion for summary judgment. The court remands for a determination of benefits consistent with this opinion.

DATED:     9/5/06

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WAS PROVIDED TO:**

**Counsel for plaintiff:**

Gretchen Anne Regenhardt
California Rural Legal Assistance, Inc.
21 Carr Street
Watsonville, CA 95076

**Counsel for defendant:**

Michael A. Cabotaje
333 Market Street
Suite 1500
San Francisco, CA 94105

Sara Winslow
United States Attorney's Office
Northern District of California
450 Golden Gate Avenue
10th Floor, Box 36055
San Francisco, CA 94102

Date:   9/5/06                                                     SPT
                                                       Chambers of Judge Whyte